# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| MARK SALMON, | ) |
| Petitioner, | ) |
| v. | ) Case No.: 4:18-cv-01978-KOB-JHE |
| KEVIN MCALEENAN, et al., | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

The magistrate judge filed a report and recommendation on November 8, 2019, recommending that this petition for habeas corpus relief filed by Mark Salmon ("Salmon") pursuant to 28 U.S.C. § 2241 be denied. (Doc. 25). Salmon filed timely objections. (Doc. 30).

Thereafter, on December 23, 2019, the Eleventh Circuit Court of Appeals issued a published opinion in *Singh v. U.S. Attorney General* holding that application of 8 U.S.C. § 1231(a)(1)(C) to a detainee's failure or refusal "to make timely application in good faith for travel or other documents necessary to the alien's departure," to extend the removal period, requires proof of bad faith. 945 F.3d 1310, 1314 (11th Cir. 2019). Because that holding was directly relevant to the issue in the instant petition, the magistrate judge allowed the parties to submit supplemental

pleadings. Both the petitioner and the respondents took advantage of that opportunity. (Docs. 32 & 36).

Salmon has stated he was born in Jamaica on May 9, 1989, but refuses to put that information into an application for an amended Jamaican birth certificate because he asserts he lacks first-hand knowledge of this information and never met his birth mother. (*See e.g*., doc. 30 at 12-13). Thus, he claims he cannot complete the required form as a "declarant."[1] (Doc. 36 at 10). Because he will not complete the form, Jamaica cannot issue an amended birth certificate that is necessary before it will issue a travel document. And without a travel document, Salmon sits in ICE custody.

Salmon was first ordered removed on August 23, 2010. (Doc. 8-1, ¶ 7). In January 2012, the Jamaican Consulate General informed ICE that Salmon's birth had not been registered in Jamaica, thus his birth would have to be registered before a travel document could be issued. (*Id*. ¶ 12). Salmon was released from ICE custody with instructions to complete the process of obtaining his birth certificate by registering his birth in Jamaica. (*Id.* ¶ 13). In October 2016, Salmon was convicted of felony grand larceny in New York and sentenced to one to three years.

---

[1] Salmon also asserts "Respondents possess the same information as Mr. Salmon. If the U.S. government believes that the Jamaican government will accept forms without being signed by a declarant, then it could just as easily fill in the forms and submit them to the Jamaican government." (Doc. 36 at 10).

(*Id.* ¶ 14).  ICE placed a detainer and on November 15, 2017, took custody of Salmon.  (*Id.* ¶¶ 15-16).  Salmon has remained in ICE custody since that date.

In January 2018, the Jamaican government informed ICE it could not issue a travel document because Salmon failed to provide any verifiable information.  (Doc. 8-1, ¶ 17).  He did not identify his mother, did not provide any documents, and did not know of any relatives in Jamaica.  (*Id.*).  A post order custody review in February 2018, continued detention and recommended extension of the removal period due to Salmon's failure to comply with the prior ICE directive to register his birth in Jamaica.  (*Id.* ¶ 18).  Because of Salmon's ongoing failure to provide the necessary information, on April 17, 2018, he was placed in Failure to Comply status pursuant to 8 U.S.C. § 1231(a)(1)(C).  (*Id.*, ¶ 22).

In June 2018, ICE received a previously requested genealogical report from Jamaica, which confirmed Salmon's father was Mark Ferdinand Salmon, his father's mother was Jean Fox, and identified Debbie Gapoor as his possible mother.  (Doc. 8-1, ¶ 23).  The report noted that Debbie Gapoor gave birth to a male child with the same birth date as Salmon, in Kingston, Jamaica, but the birth record does not list a father.  (*Id.*).  Because Debbie Gapoor is now deceased, Salmon or a family member must verify the information on the birth record.  (*Id.*).

3

Although Salmon refuses to place this information in a sworn statement to the government of Jamaica, he provided this same information for a presentencing report completed by the New York Probation and Parole office in October 2015. (*Id*. ¶ 24).

According to Salmon, he cannot be detained pursuant to 8 U.S.C. § 1231(a)(1)(C) because the presumptively reasonable six-month removal period expired in January 2012; thus nothing remains of the removal period to now be extended. (Doc. 30 at 11; doc. 36 at 5). He further claims that because Jamaica will not issue a travel document for him without a birth certificate, his removal is not reasonably foreseeable. (Doc. 36 at 6). Thus, he asserts *Zadvydas v. Davis,* 533 U.S. 678 (2001), demands his release. (Doc. 1 at 18-22).

With this background, and in light of the parties' contentions pursuant to *Singh,* the court considers Salmon's objections to the report and recommendation. Salmon objects to the report and recommendation's finding that he is detained by extension of the removal period pursuant to 8 U.S.C. § 1231(a)(1)(C), as he claims his removal period expired in 2012.[2] The problem for Salmon is, regardless of the

---

[2] Authority for whether the removal period, begun by an event listed in 8 U.S.C. § 1231(a)(1)(B), is a one-time occurrence or capable of repetition can be found supporting either interpretation. *Compare Diaz-Ortega v. Lund*, 2019 WL 6003485, *8 (W.D. La. Oct. 15, 2019) (statute does not allow for multiple removal periods); *Diouf v. Mukasey*, 542 F.3d 1222, 1231 (9th Cir. 2008) (allowing for multiple removal periods ); *Kudishev v. Aviles*, 2015 WL 8681042, *3 (D.N.J. Dec.10, 2015) (gathering cases and holding multiple removal periods are anticipated by § 1231(a)(1)(B)).

4

removal period specified in 8 U.S.C. § 1231(a)(1)(B), his detention is authorized by § 1231(a)(6).[3] *See Singh*, 945 F.3d at 1313.

*Zadvydas* held indefinite detention pursuant to § 1231(a)(6) was not authorized and found six months to be a presumptively reasonable amount of time to effectuate removals under that subsection. 533 U.S. at 701. However, the Court in *Zadvydas* also concluded that not every alien must be removed or released within six months; rather, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* And nothing in *Zadvydas* or its progeny limit detention pursuant to § 1231(a)(1)(C), which authorizes extension of the removal period where a noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure." *See e.g. Reyes-Rivera v. Sessions*, 2018 WL 5986533, *3 (N.D. Fla. Oct. 4, 2018) (citing *Powell v. Ashcroft,* 194 F.Supp.2d 209, 212 (E.D.N.Y. 2002)) (holding *Zadvydas* inapplicable because it "did not discuss the constitutionality of Section 1231(a)(1)(C) and the tolling of the removal period during the time of an alien's non-cooperation"); *Bailey v. Lynch*, 2016 WL 5791407, *3 (D.N.J Oct. 3, 2016) (holding that although the petitioner's

---

[3] That statute provides that noncitizens who have been ordered removed because of certain criminal convictions, or those whom the Attorney General has found "to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6).

5

"presumptively reasonable period of detention had elapsed before he was taken back into immigration custody, his actions while in detention, specifically refusing to cooperate with his removal by telling Jamaican officials that he was born in the U.S. Virgin Islands despite his Jamaican birth certificate … implicate 8 U.S.C. § 1231(a)(1)(C)."). Thus, based on the Eleventh Circuit's decision in *Singh,* the sole question before this court is whether Salmon's refusal to complete relevant forms constitutes the requisite bad faith to extend the removal period.

In the report and recommendation, the magistrate judge posited that Salmon's failure to complete documents provided by ICE demonstrated a lack of good faith. As the Court in *Singh* held: if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain him because "the keys to [the petitioner's] freedom are in his pocket and he could likely effectuate his removal by providing the information requested;" so he "cannot convincingly argue that there is no significant likelihood of removal." 945 F.3d at 1314 (original alterations removed, alteration added). The Court stated: "the test makes it clear that bad faith must be proven before the removal period can be extended for failure to return a complete and accurate travel application." *Id.*

Here, Salmon has taken the tact that because he lacks first-hand knowledge of his birth, he cannot provide the information that he does have (doc. 30 at 13), despite previously having provided that same information to the State of New York. Salmon

claims that despite his father having provided him the very information necessary to complete the relevant form, he cannot place that information on the form because "Mr. Salmon has never met or spoken to his mother, and was not even told his purported mother's name until he was an adult." (*Id.*).

Nothing in Salmon's statement provides any indicia of lack of reliability of the information Salmon does possess. Rather, because Salmon himself determined he lacks sufficient information to complete the forms, he also determined providing the information he does have serves no purpose. (*Id.* at 12-13). Had Salmon provided the information he does have, and had Jamaica then refused to issue an amended birth certificate, a finding of good faith would be evident on the face of the record and he would fall outside the realm of § 1231(a)(1)(C) and within the concerns of *Zadvydas*.

Instead, Salmon's failure to fill out *any* information on the grounds he has provided epitomizes the bad faith determination the court held necessary in *Singh*. Quite simply, until Salmon acts in good faith by completing the necessary paperwork with the information he does possess, he cannot establish his continued detention is unfounded because "no significant likelihood of removal in the reasonably foreseeable future" exists. *Zadvydas*, 533 U.S. at 701. Because the government has established a lack of good faith by Salmon, his detention pursuant to § 1231(a)(1)(C) remains proper.

Accordingly, after a *de novo* consideration of the entire file in this action, including the report and recommendation, the objections to it, intervening case law, and the parties' additional briefs, the court **OVERRULES** the objections, **ADOPTS** the magistrate judge's report and **ACCEPTS** his recommendation. The court finds the petition for habeas corpus is due to be **DENIED**.

A separate order will be entered.

DONE and ORDERED this 14th day of May, 2020.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE